**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRANDON BURNS-PERRY,

   Petitioner,

v.

CASE NO. 2:07-CV-12212
HONORABLE MARIANNE O. BATTANI
UNITED STATES DISTRICT COURT

MILLICENT D. WARREN,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Brandon Burns-Perry, ("Petitioner"), confined at the Lakeland Correctional

Facility in Coldwater, Michigan, has filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  In his application, filed pro se, petitioner

challenges his conviction for first-degree felony murder, M.C.L.A. 750.316(b).  For

the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

### I.  Background

Petitioner was convicted of the above offense following a jury trial in the

Oakland County Circuit Court. [1]  Both parties have provided extensive factual

summaries in their various pleadings.  Accordingly, the Court will only discuss the

_____

[1]  Petitioner was also convicted of armed robbery but that conviction was vacated on direct appeal on Double Jeopardy grounds.

1

facts that are pertinent to petitioner's involvement in the crime.

On September 2, 2003, petitioner assisted Thomas Jackson, John Spratt, and Shirley Haywood with the armed robbery of a hotel in Troy, Michigan. During the robbery, the night clerk, Michelle Eberhard, was tied up with a telephone cord, robbed, and then shot in the back of the head at close range, execution style. The prosecutor's theory was that petitioner was not the shooter but aided and abetted in the commission of the crimes.

Marcus Perry testified that he was petitioner's cousin and Shirley Haywood's son. (Tr. 2/3/04, pp. 491-92). Perry lived with petitioner at a residence located at 13429 Moran in Detroit, Michigan. (Id., p. 476). Co-defendant Thomas Jackson lived at 13433 Moran with his wife. (Id., p. 480). On the night of September 2, 2003, Perry was at home when Haywood, Jackson and Spratt arrived with petitioner. Perry later heard a gunshot coming from petitioner's room. Marcus Perry went upstairs and saw a .9-millimeter gun in petitioner's hand. (Id., pp. 482-84). Petitioner informed Perry that they had taken the .9-millimeter from a "spot" (i.e., a drug house) and "it was sweet." Petitioner admitted to Perry that he had seen the .9-millimeter gun in the car and stated: "this mug is sweet." (Id., pp. 486-88). Perry testified that Shirley Haywood gave him some money to hold after they returned from the Holiday Inn. Perry's uncle later told him to get rid of what Haywood had given him. Perry testified that he threw the money into an alley. (Id., pp. 495-99).

2

Sergeant Barry Whiteside of the Troy Police Department negotiated with petitioner and his grandmother to have petitioner turn himself in to the police. (Tr. 2/5/04, pp. 596-99). In an initial interview with Sergeant Whiteside, petitioner admitted that he knew that Thomas Jackson had been employed at the Holiday Inn. Petitioner called Shirley Haywood his aunt. Petitioner indicated that he did not really know Spratt, having met him only three times. Petitioner admitted to being with Jackson and Haywood on the night in question and accompanying them to Spratt's house. Petitioner stated that after they picked up Spratt, petitioner fell asleep in the car. Petitioner admitted that Jackson backed the car he was driving into a handicapped parking spot at the side of the Holiday Inn. Petitioner stated that he had to go to the bathroom at the hotel. Petitioner informed Sergeant Whiteside that Spratt or Jackson ordered him to come out the side door. Petitioner never used the bathroom. Petitioner then went out the side door, Spratt held the door, and Jackson entered the hotel to talk to a girl. Petitioner indicated that the men eventually left the hotel and went to petitioner's house. Petitioner claimed that Spratt pulled a purse out from behind his back and took money out of his pocket, which was split four ways. Petitioner stated that he pushed the money that he had been given away from him. Petitioner claimed that Spratt gave him a Glock 40 handgun and told him to put it away. Petitioner took the gun upstairs, and played with it before it discharged. (Id., pp. 600-08).

Petitioner initially denied knowing anything about a planned armed robbery.

3

Later in the interview with Sergeant Whiteside, however, petitioner admitted that he "thought there might have been a robbery that occurred."  Petitioner believed, however, that the men were not going to use guns.  Petitioner denied seeing any guns in the car, but admitted giving a .9-millimeter Luger firearm to Jackson. Petitioner claimed that he did not go back to the Holiday Inn after he saw the guns. (Id., pp. 609-13, 619).  Petitioner was arrested. (Id., p. 614).

Petitioner was interviewed by the police the day after his arrest.  In this second interview, petitioner acknowledged being aware that a robbery was going to occur at the Holiday Inn.  Petitioner admitted that his role in the robbery was to go into the front door of the hotel and open up the side door to let Jackson and Spratt in.  Petitioner denied seeing the gun in the car, but admitted telling his cousin that, "these n[*****]s just did a lick." (Id., pp. 614-15, 618, 624-25).

Shirley Haywood testified against petitioner as part of a plea agreement that allowed her to plead guilty to second-degree murder and armed robbery with a sentence agreement of fifteen to twenty five years. (Id., Tr. 2/5/04, pp. 767-71, 776, 794, Tr. 2/6/04, p. 856).  Haywood testified that earlier in the evening of the murder, she had driven petitioner, Jackson, and Spratt to a house in Detroit. Spratt stole a firearm from the occupants of that residence. (Tr. 2/5/04, pp. 722-27).  Petitioner asked to "see that mug," stating: "it's sweet." (Id., pp. 729, 812-13).  Spratt stated that he was "keeping that one." (Id., p. 731).  Petitioner had a brown-handled gun that night. (Tr. 2/6/04, p. 852).

4

While the four were driving, Jackson informed the others that he "knew this quick lick, [i.e. a robbery] it was in and out."  Petitioner was not asleep during the conversation.  Jackson stated that one person would be there.  Jackson, who had worked at the Holiday Inn, told them about the safe with money and that the person working at the hotel would have a key.  Jackson also indicated that there was money in little drawers.  Spratt indicated that he was "with" Jackson. Haywood testified that petitioner reaching into the area of the back passenger seat and into the trunk, before handing something to Jackson.  Jackson put the object between his legs or under his shirt.  Haywood admitted knowing that an armed robbery was going to take place. (Tr. 2/5/04, pp. 732-36, 785-86; Tr. 2/6/04, pp. 829, 837, 839, 851-53).

When the four accomplices arrived at the Holiday Inn, petitioner tried to enter through the back door, but it was locked.  Jackson then backed the car into a handicapped parking spot.  Jackson then told petitioner "you know what to do." Petitioner responded "yeah."  The plan was that if petitioner encountered anyone at the hotel, he was supposed to say that he needed to use the bathroom. (Tr. 2/5/04, pp. 736-39, 788; Tr. 2/6/04, pp. 835, 854-55, 858, 863-66).

The three men got out and petitioner walked toward the front of the Holiday Inn.  Spratt and Jackson went to the trunk of the car.(Tr. 2/5/04, pp. 740, 746, 788, Tr. 2/6/04, pp. 836-37).  Haywood moved into the driver's seat of the car. (Tr. 2/5/04, p. 748).  Shortly thereafter, petitioner exited the side door of the hotel,

5

holding it open so that Jackson and Spratt could enter.  Petitioner told the men

that no one was inside the hotel. (Tr. 2/5/04, pp. 740, 746-747, 788; Tr. 2/6/04,

pp. 835-37).  Jackson and Spratt came out of the hotel after ten or fifteen minutes

and asked Haywood to pop the trunk. (Tr. 2/5/04, pp. 747, 788; Tr. 2/6/04, pp.

841-42).

The four accomplices drove to petitioner's house, where they divided the

money taken from the robbery four ways.  Haywood testified that petitioner did

not refuse to take the money.  Spratt told Jackson to put up the guns.  Petitioner

took the guns upstairs.  Haywood then heard a gunshot and saw petitioner with

Spratt's gun in his hand.  Jackson then took the guns away from petitioner. ((Tr.

2/5/04, pp. 751-56, 789-90; Tr. 2/6/04, pp. 843-45).

Jackson, Spratt, and Haywood subsequently returned to the Holiday Inn to

retrieve the telephone cord that was used to bind Eberhard's hands because they

were concerned that the cord may have contained Spratt's fingerprints. (Tr.

2/5/04, pp. 749-58, 789; Tr. 2/6/04, p. 843).  When the three arrived at the hotel,

they confronted Rachel Joost, a business traveler from Texas, who had arrived to

check in.  Jackson forced Joost to lie on the floor and shot her in the head.  Joost

survived and managed to call the police. (Tr. 2/5/04, pp. 675-99).

The following morning, Haywood saw a news report about the robbery,

which indicated that two people had been killed.  When Haywood informed

petitioner about this information, petitioner acted like he "couldn't care

6

less." (Tr. 2/5/04, pp. 774, 792; Tr. 2/6/04, p. 849).

William Rice testified that he was incarcerated in the county jail with Petitioner. Petitioner informed Rice that he was with his aunt, his cousin and their friend. Petitioner advised Rice that there were two guns involved in the crime, including a .9-millimeter. Petitioner indicated that one of the guns could have had his fingerprints on it because it was his. Petitioner gave the gun to his cousin's friend. Petitioner knew that Spratt and Jackson were armed when they entered the hotel. Petitioner knew that Thomas Jackson had worked at the hotel. Petitioner stated that if he was released, he would "probably leave [the] state" and get out of the country. (Tr. 2/6/04, pp. 870-82).

Sergeant David Livingston of the Troy Police discovered Michelle Eberhard's purse inside of a garbage bag in the kitchen of petitioner's house. The key to the Holiday Inn's cash registers was found inside that purse. (Tr. 2/5/04, pp. 540-542, 546-547).

Petitioner's conviction was affirmed on appeal. People v. Burns-Perry, No. 254213, 2005 WL 2514257 (Mich.Ct.App. Oct. 11, 2005); lv. den. 474 Mich. 1071; 711 N.W. 2d 324 (2006).

Petitioner filed a petition for writ of habeas corpus, which was held in abeyance so that petitioner could return to the state courts to exhaust additional claims. Burns-Perry v. Warren, No. 07-CV-12212, 2009 WL 2222591 (E.D. Mich. July 21, 2009).

7

Petitioner filed a motion for relief from judgment with the trial court, which was denied. People v. Burns-Perry, No. 03-193006-FC, Order (Oakland County Cir. Ct. Oct. 27, 2010). The Michigan appellate courts denied petitioner leave to appeal. People v. Burns-Perry, No. 306814, (Mich. Ct. App. May 7, 2012); lv. den. 493 Mich. 917; 823 N.W. 2d 601 (2012).

On March 14, 2013, this Court reactivated the case to the Court's active docket following the completion of petitioner's state post-conviction proceedings and permitted petitioner to file an amended habeas petition. In his original and amended habeas petitions, petitioner seeks habeas relief. For the purposes of judicial clarity, the Court will paraphrase the claims rather than quote them verbatim:

> I. The trial judge improperly instructed the jurors on the malice element necessary to convict him of aiding and abetting in a felony murder.

> II. Petitioner was deprived of a fair trial by the admission of irrelevant and prejudicial evidence concerning the assault on Rachel Joost, because petitioner had no involvement in the assault.

> III. Petitioner was denied his right to due process due to prosecutorial misconduct.

> IV. Petitioner was denied the effective assistance of trial counsel.

> V. The prosecutor presented insufficient evidence that petitioner intended to rob and kill the victim, so as to sustain his convictions for first-degree murder and armed robbery.

8

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. Williams v.

Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs

when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court may

not "issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." Id. at 410-11.

9

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S.Ct. 1855, 1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. ( citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the

10

AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Indeed, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

### III.  Discussion

**A.  Claim # 1.  The defective jury instruction.**

Petitioner first claims that the trial judge misinstructed the jurors on the requisite intent required to aid and abet in a felony murder.  Petitioner claims that the instruction as given was erroneous because it permitted petitioner to be convicted as an aider and abettor simply based upon a showing that the principal

11

acted with a wanton and wilful disregard for human life.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. Henderson v. Kibbee, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. Jones v. United States, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. Waddington v. Sarausad, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. Id. at 191.

The Michigan Court of Appeals rejected petitioner's claim, on the ground that the instruction as given "virtually mirrored" the elements set forth under Michigan law to convict a defendant of felony murder under an aiding and abetting theory. Burns-Perry, No. 2005 WL 2514257, Slip. Op. at * 1.

Federal courts are bound by the state courts' interpretation of their own

12

laws. See Mullaney v. Wilbur, 421 U.S. 684, 690-91 1975).  The nature of a

particular jury instruction that is given is a matter of state law, and a federal court

is not at liberty to grant a writ of habeas corpus simply because the federal court

finds the state court's decision was incorrect under state law. Newton v. Million,

349 F.3d 873, 879 (6th Cir. 2003).  Because the Michigan Court of Appeals

essentially found that the jury instruction as given accurately reflected Michigan

law with respect to the elements of aiding and abetting a felony murder, this

Court must defer to that determination and cannot question it. See Seymour v.

Walker, 224 F. 3d 542, 558 (6th Cir. 2000).  Petitioner is not entitled to habeas

relief on his first claim.

**B.  Claim # 1.  Evidence of the assault on Rachel Joost.**

Petitioner argues that the trial court abused its discretion when it permitted

his jury to hear evidence concerning the assault on Rachel Joost because such

evidence was inadmissible and prejudicial, in light of the fact that petitioner did

not participate in this crime.

It is "not the province of a federal habeas court to reexamine state-court

determinations on state-court questions." Estelle v. McGuire, 502 U.S. 62, 67-68

(1991).  A federal court is limited in federal habeas review to deciding whether a

state court conviction violates the Constitution, laws, or treaties of the United

States. Id.  Errors in the application of state law, especially rulings regarding the

admissibility of evidence, are usually not questioned by a federal habeas court.

13

Seymour v. Walker,  224 F. 3d at 552.

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. See Hall v. Vasbinder, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); rev'd on other grds 563 F.3d 222 (6th Cir. 2009); See also Oliphant v. Koehler, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

To the extent that petitioner argues that the state court violated M.R.E. 404(b) by admitting improper character evidence against him, he would not be entitled to relief because this claim is non-cognizable on habeas review. See Bey v. Bagley, 500 F 3d 514, 519 (6th Cir. 2007); Estelle, 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); Dowling v. U.S., 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process).  The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting "other acts" evidence. See Bugh v.

14

Mitchell, 329 F. 3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to habeas relief on his second claim.

**Claim # 3. Prosecutorial misconduct.**

Petitioner contends that he was deprived of a fair trial by prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004)(citing Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. Donnelly v. DeChristoforo, 416 U.S. at 643-45. The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" Pritchett v. Pitcher, 117 F. 3d 959, 964 (6th Cir.1997)(quoting Serra v. Michigan Dep't of Corr., 4 F.3d 1348, 1355 (6th Cir. 1993)). Moreover, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in

15

existing law beyond any possibility for fairminded disagreement." Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012)(quoting Harrington, 131 S. Ct., at 786–87). This is particularly so, "because the Darden standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations[,]'". Id. (quoting Yarborough v. Alvarado, 541 U.S. at 664).

Petitioner first contends that the prosecutor appealed to the jurors' sympathy by stating that Michelle Eberhard had been "executed" and that her children no longer had a mother, merely to obtain $ 125.00 in cash. (Tr. 2/9/04, pp. 1058-59). After defense counsel's objection was overruled, the prosecutor indicated that neither he nor the victim's family wanted the jury's sympathy but that petitioner was not entitled to sympathy because of his age. The prosecutor also told the jurors that the judge would instruct them on the role of sympathy in the case. (Id., pp. 1059, 1074). The judge later instructed the jurors that sympathy should have no influence on their decision, that the lawyers' statements and arguments were not evidence, and that they were to decide the case solely on the evidence. (Id., pp. 1104, 1106-07).

Petitioner is not entitled to habeas relief on his claim. First, the prosecutor's comment, even if it was an attempt to invoke sympathy with the jury, would not entitle petitioner to habeas relief because the remark was relatively isolated, was not extensive, and was only a small part of the closing argument that focused on summarizing the evidence. Byrd v. Collins, 209 F. 3d

16

486, 532 (6th Cir. 2000).  This portion of petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision. See Cockream v. Jones, 382 Fed. Appx. 479, 486 (6th Cir. 2010).  Finally, even if the prosecutor's appeals to the jury's emotions or sympathies was improper, this would be insufficient to render the trial fundamentally unfair, since it was likely that the nature of the crime itself would have produced juror sympathy even before the prosecutor made any of these comments. See Millender v. Adams, 187 F. Supp. 2d 852, 875-76 (E.D. Mich. 2002).

Petitioner next claims that the prosecutor impermissibly appealed to the juror's civic duty when in his rebuttal he reminded the jurors that plexiglass is used in gas stations to protect the clerk from getting shot in the head.

With regards to civic or societal duty arguments, the Sixth Circuit has noted that, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible." Byrd v. Collins, 209 F. 3d at 539 (quoting United States v. Solivan, 937 F. 2d 1146, 1151 (6th Cir. 1991)).

In this case, the prosecutor's "less than-pointed-remarks" did not rise to the level of remarks designed to incite prejudice in a jury, thus defeating petitioner's "civic duty" argument claim. See Puetas v. Overton, 168 Fed. Appx. 689, 701 (6th Cir. 2006).  Moreover, the prosecutor did not make an improper

17

civic duty argument, because the prosecutor appeared to be asking the jurors to use their common sense in evaluating petitioner's claim that he had no idea that his armed co-defendants were going to rob and kill Ms. Eberhard.  Finally, the trial court's instruction to the jury that they must not let prejudice or sympathy influence their decision defeats petitioner's claim that he was deprived of a fair trial because of an improper civic duty argument. See Knapp v. White, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003).  Petitioner is not entitled to habeas relief on his third claim.

### D.  Claims # 4 and # 5.  The procedurally defaulted claims.

Respondent contends that petitioner's remaining claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750-51 (1991).  If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986).  However, in an extraordinary case,

18

where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. Murray v. Carrier, 477 U.S. 478, 479-80 (1986).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

19

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. See Guilmette v. Howes, 624 F. 3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. Id.

The Oakland County Circuit Court judge rejected petitioner's post-conviction claims on the ground that petitioner had "failed to satisfy either the good cause or the actual prejudice prong of the two-prong standard of MCR 6.508(D)(3)." People v. Burns-Perry, No. 03-193006-FC, * 6 (Oakland County Circuit Court, October 27, 2010).  Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's post-conviction claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). See Ivory v. Jackson, 509 F. 3d 284, 292-93 (6th Cir. 2007); Howard v. Bouchard, 405 F. 3d 459, 477 (6th Cir. 2005).  The fact that the trial court may have also discussed the merits of petitioner's claims in

20

addition to invoking the provisions of M.C.R. 6.508(D)(3) to reject petitioner's claims does not alter this analysis. See Alvarez v. Straub, 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. McBee v. Abramajtys, 929 F. 2d 264, 267 (6th Cir. 1991).

In the present case, petitioner has offered no reasons for his failure to raise his fourth and fifth claims on his appeal of right. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue. Smith, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his fourth and fifth claims as a ground for a writ of habeas corpus in spite of the procedural default.

First, although petitioner claims that the evidence was insufficient to convict him of the crime [Claim # 5], petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence exception to the procedural default doctrine. See Malcum v. Burt, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Secondly, petitioner's affidavit from his co-defendant Thomas Jackson, dated September 21, 2009, is not reliable evidence of innocence. In this affidavit, Jackson claims that petitioner did not give him a firearm to commit a

21

robbery or homicide at the Holiday Inn, that there was no discussion about taking anyone's life at the Holiday Inn, and that petitioner was not an aider and abettor to the "accidental shooting death" of the victim.

Jackson's affidavit is suspect, because it was not made until six years after the shooting and some five and a half years after Jackson and petitioner were both convicted.  A long-delayed affidavit like Jackson's which seeks to exonerate petitioner is "treated with a fair degree of skepticism." Herrera v. Collins, 506 U.S. 390, 423 (1993).  Indeed, in determining whether a habeas petitioner has satisfied the miscarriage of justice standard, a federal court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." Schlup v. Delo, 513 U.S. 298, 332 (1995).

In this case, Jackson's affidavit is untrustworthy, because the purported affidavit does not offer any convincing explanation as to why Jackson waited over five years to come forward and attempt to exonerate petitioner. See Lewis v. Smith, 100 Fed. Appx. 351, 355 (6th Cir. 2004)(proper for district court to reject as suspicious a witness' recanting affidavit made two years after petitioner's trial).  In particular, "[p]ostconviction statements by codefendants [which attempt to exculpate a criminal defendant] are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences." See Allen v. Yukins, 366 F. 3d 396, 405 (6th Cir. 2004); See also

22

In re Byrd, 269 F. 3d 561, 574 (6th Cir. 2001)(petitioner did not satisfy the miscarriage of justice exception necessary to reach the merits of a successive habeas petition, where the evidence of actual innocence was an affidavit from a co-defendant which was made six years after the co-defendant had been convicted and sentenced for his part in the crime and the co-defendant's confession was made only after he was no longer subject to further punishment for his actions for these crimes).

In this case, Jackson's post-conviction attempt to exculpate petitioner is suspect, in light of the fact that it was made after Jackson himself was sentenced and was no longer subject to any further punishment or other adverse consequences for his actions.

Jackson's affidavit is also unreliable because it is inconsistent with the evidence presented at trial, which established petitioner's active involvement in the robbery. Allen v. Yukins, 366 F. 3d at 406 (post-conviction affidavit of habeas petitioner's co-defendant was legally insufficient to establish that she was actually innocent of an assault charge as the assertions in the affidavit were inconsistent with the evidence presented at trial).  Petitioner's own confessions to Sergeant Whiteside and his admissions to his fellow inmate William Rice establish that petitioner actively participated in the robbery knowing that Jackson was armed.  In addition, it was unneccesary under Michigan law for petitioner to have known that Jackson was going to kill the victim in order to sustain his

23

conviction as an aider and abettor to the first-degree felony murder.  Under

Michigan law, a defendant's participation in an armed robbery, while either he or

his co-defendants were armed with a loaded firearm, manifests a wanton and

reckless disregard that death or serious bodily injury could occur, to support a

finding that the defendant acted with malice aforethought, so as to sustain a

conviction for felony-murder on an aiding and abetting theory. See Hill v.

Hofbauer, 337 F. 3d 706, 719-20 (6th Cir. 2003)(intent for felony murder "can be

inferred from the aider and abettor's knowledge that his cohort possesses a

weapon."); See also People v. Carines, 460 Mich. 750, 759-60; ; 597 N.W. 2d

130 (1999); Harris v. Stovall, 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998); People

v. Hart, 161 Mich. App. 630, 635; 411 N.W. 2d 803 (1987).

        Because petitioner has not presented any new reliable evidence that he is

innocent of these crimes, a miscarriage of justice will not occur if the Court

declined to review petitioner's post-conviction claims on the merits. See Malcum,

276 F. Supp. 2d at 677.

        Finally, assuming that petitioner had established cause for his default, he

would be unable to satisfy the prejudice prong of the exception to the procedural

default rule, because his claims would not entitle him to relief.  The cause and

prejudice exception is conjunctive, requiring proof of both cause and prejudice.

See Matthews v. Ishee, 486 F. 3d 883, 891 (6th Cir. 2007).   For the reasons

stated by the Oakland County Circuit Court in rejecting petitioner's post-

24

conviction motion and by the Assistant Michigan Attorney General in her answer to the amended petition for writ of habeas corpus, petitioner has failed to show that his post-conviction claims have any merit.  Petitioner is not entitled to habeas relief on his remaining claims.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. Id. at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right,

and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Id. at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. Id. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because petitioner has failed to make a substantial showing of the denial of a federal constitutional right. See Dell v. Straub, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. See Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not

frivolous; it does not require a showing of probable success on the merits.

Foster, 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this

Court's resolution of petitioner's claims, the issues are not frivolous; therefore,

an appeal could be taken in good faith and petitioner may proceed in forma

pauperis on appeal. Id.

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of

Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **GRANTED** leave to

appeal in forma pauperis

s/Marianne O. Battani
**HONORABLE MARIANNE O. BATTANI**
Dated: **December 17, 2013**    **UNITED STATES DISTRICT JUDGE**

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order
was served upon the Petitioner via ordinary U.S. Mail and Counsel for the
Respondent, electronically.

s/Bernadette M. Thebolt
Case Manager